# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID W. FAUNCE, CDCR #C-53742, Plaintiff, vs. P. COVELLO, J. MARTINEZ, E. ORTIZ, H. TERREL, C. GODINEZ, T. MCWAY, Defendants. | Case No.: 3:21-cv-00363-MMA-WVG **ORDER GRANTING MOTION TO PROCEED IN FORMA PAUPERIS;** [Doc. No. 2] **DISMISSING CLAIMS AND DEFENDANT COVELLO FOR FAILURE TO STATE A CLAIM PURSUANT TO 28 U.S.C. § 1915(e)(2)(B) AND 28 U.S.C. § 1915A(b); AND** **DIRECTING U.S. MARSHAL TO EFFECT SERVICE UPON DEFENDANTS MARTINEZ, ORTIZ, TERREL, GODINEZ, AND MCWAY PURSUANT TO 28 U.S.C. § 1915(d) AND Fed. R. Civ. P. 4(c)(3)** |

Plaintiff David W. Faunce, currently incarcerated at the Richard J. Donovan Correctional Facility ("RJD"), is proceeding *pro se* in this civil rights action pursuant to 42 U.S.C. Section 1983. *See* Doc. No. 1 ("Compl.") Plaintiff alleges that prison

officials violated his First and Fourteenth Amendment rights when they destroyed Plaintiff's word processor in retaliation for pursuing a petition for writ of habeas corpus and for filing other litigation and administrative grievances against prison officials. *See id.* at 4-7, 13-20. Plaintiff did not prepay the $402 civil filing fee required by 28 U.S.C. Section 1914(a) at the time of filing and has instead filed a Motion to Proceed in Forma Pauperis ("IFP") pursuant to 28 U.S.C. Section 1915(a). *See* Doc. No. 2.

**I.      Motion to Proceed in Forma Pauperis**

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $402.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). However, a prisoner who is granted leave to proceed IFP remains obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, 136 S. Ct. 627, 629 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether his action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1), (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $52. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2020)). The additional $52 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 136 S. Ct. at 629.

In support of his IFP Motion, Plaintiff has submitted a certified copy of his trust account statement pursuant to 28 U.S.C. § 1915(a)(2) and Civil Local Rule 3.2. *Andrews*, 398 F.3d at 1119. The Court has reviewed Plaintiff's trust account activity, as well as the attached prison certificate verifying his available balances. *See* Doc. No. 3 at 1, 3-4. These documents show that although Plaintiff carried an average monthly balance of $82.93 and had average monthly deposits to his trust account of $78.86 for the six months preceding the filing of this action, Plaintiff had an available balance of just $0.36 at the time of filing. *See id.*

Therefore, the Court **GRANTS** Plaintiff's Motion to Proceed IFP and declines to impose a partial filing fee pursuant to 28 U.S.C. Section 1915(b)(1) because his prison certificate indicates he may currently have "no means to pay it." *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered."). Instead, the Court directs the Secretary of the CDCR, or her designee, to collect the entire $350 balance of the filing fees required by 28 U.S.C. §1914 and to forward them to the Clerk of the Court pursuant to the installment payment provisions set forth in 28 U.S.C. § 1915(b)(1).

**II.   Sua Sponte Screening pursuant to 28 U.S.C. Section 1915(e)(2) and Section 1915A(b)**

A. <u>Standard of Review</u>

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint requires a pre-answer screening pursuant to 28 U.S.C. §§1915(e)(2) and 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. Section 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.,* 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under Section 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to section 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

B. Plaintiff's Factual Allegations

As mentioned, Plaintiff's Complaint focuses on the alleged destruction of his word processor by RJD officials. *See* Compl. at 4. When Plaintiff arrived at RJD in late 2006, he brought his word processor, which was inspected by prison personnel and sealed in order to prevent Plaintiff from concealing anything inside it. *See id.* According to Plaintiff, the seals were not broken, "nor was any type of contraband ever concealed within [P]laintiff's word processor." *See id.*

In 2018, Plaintiff filed a habeas corpus action in state court. *Id.* at 5. In that case, Plaintiff alleged that "the statutory and regulatory scheme authorizing [the California Department of Corrections and Rehabilitation ("CDCR")] to tax prisoners co-pays for medical visits and costs for prescribed medical and dental services and appliances . . . were invalid and unenforceable." *Id.* The legislature subsequently modified these policies, and Plaintiff's petition was denied without opinion. *See id.* Plaintiff contends that "the petition filed by him in the California Supreme Court, although denied, was the catalyst that directly resulted" in these policy changes and that their implementation "cost[] the CDCR untold millions of dollars." *Id.* at 6.

On June 8, 2019, Defendant Covello ordered that the unit in which Plaintiff is housed be searched. *See id.* Defendants Ortiz and Godinez supervised the search, and Defendant McWay searched Plaintiff's cell. *See id.* Prior to the search, Plaintiff was removed from his cell, searched, and not allowed to observe while his cell was inspected. *See id.* After several hours, Defendant McWay told Plaintiff that he would be receiving a rule violation report ("RVR") "for possession of a cell phone in his word processor," and "presented [P]laintiff with a . . . property disposal chrono, explaining that his word processor was smashed and inoperable and had to be disposed of." *See id.* at 7. Although the chrono apparently gave Plaintiff the option to have the word processor sent home, Defendant McWay refused to do so despite Plaintiff's request. *See id.* Contrary to the cell search slip prepared by Defendant McWay, Plaintiff alleges that the word processor was working prior to the search and did not contain a cell phone. *See id.* at 7-8.

When Plaintiff received the RVR and photographs of the seized phone more than a week later they "showed the wrong cell number in which the photographed items were allegedly found," and did not show where in his cell the phone was allegedly located. *See id.* at 8. Plaintiff's disciplinary hearing was conducted by Defendant Terrel, who found Plaintiff guilty of possessing the phone and assessed 90 days of lost credit, relying in part on a photograph that Plaintiff was allegedly denied access to. *See id.*

Plaintiff filed an administrative appeal, which was denied at the second level by Defendant Ortiz and signed by Defendant Covello. *See id.* at 9. According to Plaintiff, this review ignored certain issues Plaintiff raised in his appeal, at least partly on the grounds that his claims were untimely. *See id.* Plaintiff's third level appeal was granted, at least in part, finding that Plaintiff should receive a new hearing. *See id.* at 10. After that new hearing, Plaintiff was found not guilty. *See id.*

According to Plaintiff, the disciplinary charges against him were fabricated in retaliation for Plaintiff's pursuit of litigation against the CDCR and prison officials and for providing assistance to other inmates in filing grievances and other claims of official misconduct by Defendant Godinez and others. *See id.* at 11. Plaintiff's version of events is somewhat unclear, but he appears to allege that Defendant Godinez ordered Defendant McWay to dispose of Plaintiff's destroyed word processor even though no cell phone was actually concealed inside it. *See id.* Defendant Ortiz, who was also allegedly supervising the cell searches then covered up the destruction of Plaintiff's word processor "by agreeing to manufacture photographs of a cell phone and a false [RVR] charging [P]laintiff with possession of a cell phone." *Id.* Defendant Martinez allegedly ordered Defendant Terrel to find Plaintiff guilty of possessing a cell phone in the RVR proceedings. *See id.* at 12. Defendants Covello and Ortiz then allegedly approved of the retaliation against Plaintiff by denying and mishandling his administrative appeal. *See id.*

According to Plaintiff, these actions violated his First and Fourteenth Amendment rights and constitute a conspiracy. *See id.* at 13-20. Plaintiff seeks compensatory damages for the word processor and punitive damages based on Defendants' conduct.

*See id.* at 12-13. He also seeks injunctive relief preventing further retaliation and directing that he be transferred from RJD. *See id.* at 22.

C. <u>Analysis</u>

To state a claim under 42 U.S.C. Section 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Naffe v. Frye*, 789 F.3d 1030, 1035-36 (9th Cir. 2015). As mentioned, Plaintiff's claims focus on alleged violations of the First and Fourteenth Amendments. The Court addresses each claim in turn.

Plaintiff's Fourteenth Amendment allegations focus on alleged misconduct in the RVR and appeals process and the destruction of his personal property. *See* Compl. at 20. To the extent Plaintiff's claims are based on the allegedly false RVR, they must be dismissed. "The issuance of a false RVR, alone, does not state a claim under section 1983." *See Murschel v. Paramo*, No. 3:17-CV-1142 BTM (AGS), 2018 WL 539159, at *4 (S.D. Cal. Jan. 22, 2018) (citing *Dawson v. Beard*, No. 1:15-CV-1867 DLB, 2016 WL 1137029, at *5-6 (E.D. Cal. Mar. 23, 2016)); *see also, e.g.*, *Solomon v. Meyer*, No. 11-CV-2827 JST (PR), 2014 WL 294576, at *2 (N.D. Cal. Jan. 27, 2014) ("[T]here is no due process right to be free from false disciplinary charges.").

Additionally, any claims based on the alleged mishandling of administrative appeals must also be dismissed. Prison officials are generally not liable for due process violations simply for denying or failing to process inmate grievances. *See, e.g.*, *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (concluding that allegations "that prison officials 'added things' to [an inmate's] appeal to mask the procedural errors committed at the disciplinary hearing" failed to state a due process claim).

Plaintiff's claim that the destruction of his word processor violated his Fourteenth Amendment due process rights must be dismissed as well. Ordinarily, due process requires notice and an opportunity for some kind of hearing before Plaintiff can be deprived of a significant property interest. *See Sinaloa Lake Owners Ass'n v. City of Simi*

*Valley*, 882 F.2d 1398, 1405 (9th Cir. 1989), *overruled on other grounds by Armendariz v. Penman*, 75 F.3d 1311, 1324-25 (9th Cir. 1996). "Neither the negligent nor intentional deprivation of property states a due process claim under [S]ection 1983 if the deprivation was random and unauthorized, however." *Elzy v. Duran*, No. 3:20-cv-0545-JAH (BLM), 2020 WL 3034796, at *4 (S.D. Cal. June 4, 2020) (collecting cases).

Although Plaintiff alleges that prison officials authorized the seizure and destruction of his word processor, he does not allege that this search and destruction of the word processor were done in accordance with state procedures—on the contrary, Plaintiff alleges that Defendants' actions did not comply in various ways with state regulations. *See Hudson v. Palmer*, 468 U.S. 517, 520, 533-34 (1984) (concluding that a guard's intentional destruction of an inmate's non-contraband property during a cell search was "random and unauthorized conduct," and therefore failed to state a due process claim); *Valdes v. Schwarzenegger*, No. CIV S-07-1535 DOC, 2009 WL 1440249, at *5 (E.D. Cal. May 20, 2009) (concluding that seizure of personal property by prison officials was unauthorized even though state regulations authorized cell searches). In such cases, if a state provides an adequate post-deprivation remedy, through a state tort action for example, the existence of that remedy satisfies the requirements of due process. *See Zinermon v. Burch*, 494 U.S. 113, 128 (1990) ("In some circumstances, however, the Court has held that a statutory provision for a post deprivation hearing, or a common-law tort remedy for erroneous deprivation, satisfies due process." (citations omitted)). As the Ninth Circuit has recognized, California law provides such an adequate remedy. *See Barrett v. Centoni*, 31 F.3d 813, 816-17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810-895). Accordingly, Plaintiff's due process claims are dismissed in their entirety for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); 28 U.S.C. § 1915A(b)(1).

Turning now to Plaintiff's First Amendment retaliation claims, the Court finds that Plaintiff's Complaint contains plausible allegations sufficient to clear the "low threshold" set for sua sponte screening as required by 28 U.S.C. §§ 1915(e)(2) and 1915A(b) as to

8

3:21-cv-00363-MMA-WVG

Defendants Godinez, Martinez, and McWay. *See Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678.

To state a claim for First Amendment retaliation, Plaintiff must allege that: (1) a state actor took some adverse action against him, (2) the adverse action was the result of First Amendment protected conduct, (3) the state actor's actions "would chill or silence a person of ordinary firmness from future First Amendment activities," and (4) the adverse action did not reasonably advance legitimate correctional goals. *See Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). As other Courts have concluded, the seizure and destruction of personal property and issuance of false disciplinary citations, when coupled with plausible allegations that these "adverse actions" were the result of a plaintiff's First Amendment protected conduct, can give rise to a First Amendment retaliation claim. *See, e.g.*, *Dawson v. Beard*, No. 1:15-cv-01867 DLB, 2016 WL 1137029, at *6-7 (E.D. Cal. Mar. 23, 2016) (concluding that allegations of issuance of a false RVR and subsequent finding of guilt were sufficient to state a First Amendment retaliation claim at screening stage); *Ahmed v. Ringler*, No. 2:13-cv-1050 MCE DAD P, 2015 WL 502855, at *3-5 (E.D. Cal. Feb. 5, 2015) (holding that First Amendment claims premised on allegedly retaliatory cell search resulting in destruction of inmate's personal property survived motion to dismiss).

Plaintiff's allegations regarding his litigation history and assistance to other inmates in filing grievances and other complaints against prison officials including Defendant Godinez, Defendants Godinez, and Ortiz's animus toward Plaintiff for those activities, and the connection between Plaintiff's word processor and that First Amendment protected conduct are sufficient to state a retaliation claim as to Godinez, Ortiz, and McWay.

Additionally, Plaintiff alleges that Defendants conspired to retaliate against Plaintiff. *See* Compl. at 14. "Conspiracy is not itself a constitutional tort under § 1983" and it "does not enlarge the nature of the claims asserted by the plaintiff, as there must always be an underlying constitutional violation." *Lacey v. Maricopa Cnty.*, 693 F.3d

896, 935 (9th Cir. 2012) (en banc). Conspiracy may, however, "enlarge the pool of responsible defendants by demonstrating their causal connections to the violation . . .." *Id.* In order to allege a conspiracy under Section 1983, Plaintiff must allege "an agreement or 'meeting of the minds' to violate constitutional rights." *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002) (citing *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-41 (9th Cir. 1989) (en banc)).

The Court finds that Plaintiff's allegations that Defendants Godinez, Ortiz, McWay, Martinez, and Terrel agreed to retaliate against Plaintiff in violation of his First Amendment rights are sufficient to clear the "low threshold" set for sua sponte screening as required by 28 U.S.C. §§ 1915(e)(2) and 1915A(b). *See Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678. To the extent Plaintiff seeks to assert a conspiracy claim separate from that underlying First Amendment retaliation claim, however, such a claim must be dismissed. *See Lacey*, 693 F.3d at 935 ("Conspiracy is not itself a constitutional tort . . ..").

The Court finds, however, that Plaintiff fails to state a retaliation claim against Defendant Covello either directly or as part of the alleged conspiracy. The Complaint alleges that Defendant Covello directed a search of Plaintiff's housing unit, but it does not allege that this decision was motivated by or related to Plaintiff's First Amendment activities or undertaken as part of the alleged conspiracy. *See* Compl. at 6. Similarly, Defendant Covello's only participation in the administrative appeals process was allegedly signing the denial of Plaintiff's second level appeal—a decision allegedly made by Defendant Ortiz—and that by doing so, Covello "tacitly approved" the retaliation against Plaintiff. *See id.* at 9, 12.

These allegations fail plausibly to demonstrate a retaliatory motive or the absence of a legitimate correctional purpose for Covello's actions or that Covello entered into an "agreement" with the remaining Defendants to violate Plaintiff's rights. *See Franklin*, 312 F.3d at 441. As a result, Plaintiff's claims against Defendant Covello are dismissed in their entirety for failure to state a claim upon which relief may be granted. *See* 28

10

3:21-cv-00363-MMA-WVG

U.S.C. § 1915(e)(2)(B)(ii); 28 U.S.C. § 1915A(b)(1).

III. **Conclusion and Orders**

Good cause appearing, the Court:

1. **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (Doc. No. 2).

2. **DIRECTS** the Secretary of the CDCR, or her designee, to collect from Plaintiff's prison trust account the initial filing fee assessed in this Order and shall forward the $350 filing fee owed by collecting monthly payments from Plaintiff's account in an amount equal to twenty percent (20%) of the preceding month's income and forwarding those payments to the Clerk of the Court each time the amount in the account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). ALL PAYMENTS SHALL BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order on Kathleen Allison, Secretary, California Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, California 94283-0001.

4. **DISMISSES** Plaintiff's Fourteenth Amendment claims and his claims against Defendant Covello in their entirety for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

5. **DISMISSES** Plaintiff's conspiracy claim solely to the extent it seeks relief separate and apart from the alleged underlying constitutional violation, Defendants' alleged retaliation, for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

6. **DIRECTS** the Clerk to terminate Defendant Covello as a party to this action.

7. **DIRECTS** the Clerk to issue a summons as to Plaintiff's Complaint (ECF No. 1) upon Defendants Martinez, Ortiz, Terrel, Godinez, and McWay and forward it to Plaintiff along with a blank U.S. Marshal Form 285 for each of the Defendants. In addition, the Clerk will provide Plaintiff with a certified copy of this Order, a certified

copy of his Complaint, and the summons so that he may serve these Defendants. Upon receipt of this "IFP Package," Plaintiff must complete the Form 285 as completely and accurately as possible, *include an address where these Defendants may be served*, *see* CivLR 4.1.c, and return it to the United States Marshal according to the instructions the Clerk provides in the letter accompanying his IFP package.

8. **ORDERS** the U.S. Marshal to serve a copy of the Complaint and summons upon Defendants Martinez, Ortiz, Terrel, Godinez, and McWay as directed by Plaintiff on the USM Form 285 provided to him. All costs of that service will be advanced by the United States. *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3).

9. **ORDERS** Defendants Martinez, Ortiz, Terrel, Godinez, and McWay, once served, to reply to the claims in Plaintiff's Complaint that survived sua sponte screening within the time provided by the applicable provisions of Federal Rule of Civil Procedure 12(a). *See* 42 U.S.C. § 1997e(g)(2) (while a defendant may occasionally be permitted to "waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983," once the Court has conducted its sua sponte screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and thus, has made a preliminary determination based on the face on the pleading alone that Plaintiff has a "reasonable opportunity to prevail on the merits," defendant is required to respond).

10. **ORDERS** Plaintiff, after service has been effectuated by the U.S. Marshal, to serve upon Defendants Martinez, Ortiz, Terrel, Godinez, and McWay, or, if appearance has been entered by counsel, upon Defendants' counsel, a copy of every further pleading, motion, or other document submitted for the Court's consideration pursuant to Fed. R. Civ. P. 5(b).

Plaintiff must include with every original document he seeks to file with the Clerk of the Court, a certificate stating the manner in which a true and correct copy of that document has been served on the Defendants or their counsel, and the date of that service. *See* CivLR 5.2.

//

Any document received by the Court which has not been properly filed with the Clerk, or which fails to include a Certificate of Service upon the Defendants, may be disregarded.

**IT IS SO ORDERED**.

DATED: June 30, 2021

_____
HON. MICHAEL M. ANELLO
United States District Judge