# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

DAVID W. FAUNCE,

                         Plaintiff,

v.

J. MARTINEZ, et al.,

                      Defendants.

Case No. 21-cv-363-MMA (WVG)

**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR LEAVE TO AMEND;**

[Doc. No. 33]

**DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; AND**

[Doc. No. 44]

**DEFERRING RULING ON PLAINTIFF'S MOTION TO PRECLUDE EVIDENCE**

[Doc. No. 56]

David W. Faunce ("Plaintiff"), a California state prisoner proceeding *pro se*, brings this civil rights action against officials at the R.J. Donovan Correctional Facility ("RJD") pursuant to 42 U.S.C. § 1983.  Doc. No. 1 ("Compl.").  On September 21, 2021, Defendants filed an answer to the Complaint.  Doc. No. 15.

Plaintiff seeks leave to file a First Amended Complaint.  Doc. No. 33.  While that matter was submitted and pending before the Court, Defendants filed a motion for summary judgment on the basis of exhaustion.  Doc. No. 44.  Both motions are fully

briefed, *see* Doc. Nos. 38, 43, 51, 58, and suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1, *see* Doc. No. 45.  Plaintiff has also filed a motion to preclude evidence.  Doc. No. 56.  For the reasons set forth below, the Court **GRANTS IN PART** Plaintiff's motion for leave to amend, **DENIES** Defendants' motion for summary judgment, **GRANTS** summary judgment in Plaintiff's favor as to exhaustion, and **DEFERS** ruling on Plaintiff's motion to preclude evidence at this time.

## I. BACKGROUND[1]

### A.   Factual Background

Plaintiff's case arises from the alleged destruction of his word processor[2] by RJD officials during a cell search on June 8, 2019.  *See* Compl. at 4.[3]  Plaintiff asserts that it was destroyed, and that the destruction was covered-up, in retaliation for his litigation efforts against the California Department of Corrections and Rehabilitation ("CDCR").  *See id.* at 11.

In 2018, Plaintiff filed a habeas corpus action in state court.  *Id.* at 5.  In that case, Plaintiff challenged "the statutory and regulatory scheme authorizing CDCR to tax prisoners co-pays for medical visits and costs for prescribed medical and dental services

---

[1] Defendants did not submit a separate statement of undisputed material facts with their summary judgment motion and thus their motion does not comply with the undersigned's Civil Chambers rules or the Local Rules.  *See* Civ. Chambers R. IV; CivLR 7.1.f.1.  Plaintiff nonetheless converted the body of Defendants' motion into a chart identifying the disputed facts.  Doc. No. 51-1 ("Plaintiff's Separate Statement" or "SS").  Defendants did not respond to Plaintiff's Separate Statement.  *See* Doc. No. 58.

\* \* \*

This background section is taken from the Complaint.  It is intended solely to provide context and does not state the undisputed facts of the case.  The facts material to Defendants' motion, disputed or undisputed, will be discussed in further detail *infra* where appropriate.

[2] The Court refers to Plaintiff's word processor and typewriter interchangeably.

[3] All citations to electronically filed documents refer to the pagination assigned by the CM/ECF system.

and appliances." *Id.* The legislature subsequently modified these policies, and Plaintiff's petition was denied without opinion. *See id.* Plaintiff contends that "the petition filed by him in the California Supreme Court, although denied, was the catalyst that directly resulted" in these policy changes and that their implementation "cost[] the CDCR untold millions of dollars." *Id.* at 6. Further, Plaintiff alleges that he actively assists other prisoners in filing grievances and complaints. *See id.* at 11.

When Plaintiff arrived at RJD in late 2006, he brought his word processor, which was inspected by prison personnel and sealed in order to prevent Plaintiff from concealing anything inside it. *See id.* at 4. According to Plaintiff, the seals were not broken, "nor was any type of contraband ever concealed within [P]laintiff's word processor." *Id.*

According to the Complaint, on June 8, 2019, Warden Covello ordered that the unit where Plaintiff was housed at the time be searched. *See id.* at 6. Defendants Ortiz and Godinez supervised the search, while Defendant McWay searched Plaintiff's cell. *See id.* Prior to the search, Plaintiff was removed from his cell, searched, and not allowed to observe while his cell was inspected. *See id.* After several hours, Defendant McWay told Plaintiff that he would be receiving a Rules Violation Report "for possession of a cell phone in his word processor" and "presented [P]laintiff with a . . . property disposal chrono, explaining that his word processor was smashed and inoperable and had to be disposed of." *Id.* at 7. Plaintiff alleges that the word processor was working prior to the search and did not contain a cell phone.[4] *See id.* at 7–8. Plaintiff signed the disposal chrono, electing to send it to an address outside of the prison, but Defendant McWay "refused to sign the chrono," and instead, the typewriter was put in the trash. *See id.* at 7.

---

[4] McWay allegedly found a cell phone and charging cord in the typewriter, as well as a USB charger hidden elsewhere in the cell. *See* Doc. No. 44-3 at 43. While all three items are mentioned in the Rules Violation Report, it is unclear if the latter two were included in the charge against Plaintiff, as the two hearings on the matter only addressed the "specific charge of possession of a cellular telephone.'" *Id.* at 52, 66. Accordingly, the Court refers only to the alleged possession of a cell phone.

Plaintiff asserts that his typewriter was intentionally broken and disposed of, and that Defendant McWay then authored the false Rules Violation Report upon Defendants Godinez and Ortiz's orders to cover up its destruction. *See id.* at 18.  When Plaintiff received the Rules Violation Report and photographs of the seized phone more than a week later, they "showed the wrong cell number in which the photographed items were allegedly found," and did not show where in his cell the phone was allegedly located. *Id.* at 8.  Plaintiff asserts that Defendant Ortiz manufactured the false photographs. *See id.* at 11.  Plaintiff's disciplinary hearing was conducted (by who we now know is) Lieutenant H. Ferrel, who found Plaintiff guilty of possessing the phone and assessed 90 days of lost credit. *See id.* at 18.

Plaintiff filed an administrative appeal, which was denied at the second level by Defendant Ortiz and signed by Warden Covello. *See id.* at 9.  As will be discussed in further detail below, Plaintiff contends that Defendant Ortiz mishandled his appeal by ignoring the primary issue Plaintiff raised: the retaliatory destruction of his typewriter and cover-up. *See id.*  Plaintiff's third level appeal was "granted in part." *See id.* at 10.  Ultimately, after receiving a new hearing, Plaintiff was found not guilty of the cell phone-related violation. *See id.*

**B.    Procedural History**

On March 2, 2021, Plaintiff filed a complaint against "P. Covello, Warden; J. Martinez, Captain (A); E. Ortiz, Corr. Lt.; H. Terrel, Corr. Lt.; C. Godinez, Corr. Sgt.; and T. McWay, Corr. Officer."  Compl. at 1.  In section 2 of the Complaint, Plaintiff elaborates that he brings his claims against Patrick Covello as acting Warden of RJD, J. Martinez as acting Correctional Captain, E. Ortiz as Correctional Lieutenant, H. Terrel as Correctional Lieutenant, C. Godinez as Correctional Sergeant, and T. McWay as Correctional Officer.  Compl. at 2–4.

On June 30, 2021, the Court dismissed Plaintiff's claims against Warden Covello for failure to state a claim and directed the U.S. Marshal to effect service on the remaining Defendants.  Doc. No. 4.  Thereafter, an issue arose as to "Defendant H.

Terrel's" employment status at RJD, and defense counsel was ordered to investigate. Doc. No. 22.  According to defense counsel, "[a]fter diligent and thorough inquiry to the California Department of Corrections and Rehabilitation Department (CDCR) of Human Resources Division it was determined that CDCR has no record of a correctional officer 'H. Terrel' ever being employed by the Department."  Doc. No. 26.

On January 26, 2021, Plaintiff submitted a letter to the Court indicating that he incorrectly identified Defendant "H. Terrel," and that the correct spelling is "H. Ferrel." Doc. No. 30.

## II. MOTION FOR LEAVE TO AMEND

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend pleadings "shall be freely given when justice so requires."  Fed. R. Civ. P. 15.  However, once a district court has issued a scheduling order under Rule 16 establishing a timetable for amending pleadings, the liberal standards of Rule 15 no longer govern.  *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–08 (9th Cir. 1992).  Under Rule 16, "[a] schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  Within this context, good cause is measured by the diligence of the party seeking the amendment.  *Johnson*, 975 F.2d at 609.  "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification."  *Id.* at 609.

In ruling on matters such as these, which involve the supervision of the pretrial phase of litigation, "[t]he district court is given broad discretion."  *Miller v. Safeco Title Ins. Co.*, 758 F.2d 364, 369 (9th Cir. 1985).  If the district court finds a lack of diligence, "the inquiry should end."  *Johnson*, 975 F.2d at 609.  If, however, the movant meets the Rule 16 burden, the Court proceeds to considering the motion under the usual standard of Rule 15.

"Rule 15(a) is very liberal and leave to amend 'shall be freely given when justice so requires.'" *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 445 F.3d 1132, 1136 (9th

Cir. 2006) (quoting Fed. R. Civ. P. 15(a)).  Courts consider "undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of the proposed amendment" in deciding whether justice requires granting leave to amend under Rule 15.  *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989) (citing *Foman v. Davis*, 370 U.S. 178, 182 (1962)); *see also Cervantes v. Zimmerman*, No. 17-cv-1230-BAS-NLS, 2019 U.S. Dist. LEXIS 39789, at *8 (S.D. Cal. Mar. 12, 2019) ("Whether to grant a motion to amend depends on five factors: (1) bad faith, (2) prejudice to the opposing party, (3) futility, (4) undue delay, and (5) whether the plaintiff has previously amended.") (citing *Western Shoshone Nat. Council v. Molini*, 951 F.2d 200, 204 (9th Cir. 1991)).

Plaintiff seeks leave to amend "to correctly identify one erroneously misidentified defendant . . . and add one additional defendant who became indispensable as the case progressed, and a state law cause of action[,] which also has become necessary as the facts of the case became known."  Doc. No. 33 at 1.  According to the operative Scheduling Order, any motion to amend the pleadings was due no later than November 19, 2021.  *See* Doc. No. 16.  Plaintiff filed his motion on February 9, 2022.  *See* Doc. No. 33.  Therefore, his request is governed by Rule 16.

## A. Rule 16 Good Cause

"Good cause" exists if a party can demonstrate that the schedule "cannot reasonably be met despite the diligence of the party seeking the extension."  *Johnson*, 975 F.2d at 609 (citing Fed. R. Civ. P. 16 advisory committee's notes (1983 amendment)).  The party seeking to continue or extend the deadline bears the burden of showing good cause.  *See Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002); *Johnson*, 975 F.2d at 608.

> [To] demonstrate diligence under Rule 16's "good cause" standard, the movant may be required to show the following: (1) that she was diligent in assisting the Court in creating a workable Rule 16 order; (2) that her

1

2

noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding her diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference; and (3) that she was diligent in seeking amendment of the Rule 16 order, once it became apparent that she could not comply with the order.

3

4

5

6

*Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal. 1999) (citations omitted).

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

Defendants do not address the issue of good cause except to summarily assert that Plaintiff does not meet his burden. *See* Doc. No. 38 at 9. However, as Plaintiff explains, the Court held two settlement conferences on the eve of the November 18, 2021 amended pleadings deadline. The November 3, 2021 settlement conference "concluded with a tentative settlement" offer. Doc. No. 33 at 3; *see also* Doc. No. 21. The Court then held a continued settlement conference on November 16, 2021, wherein the case did not settle.[5] Doc. No. 33 at 3; *see also* Doc. No. 23. According to Plaintiff, he was optimistic that the case would settle and "when it appeared that no resolution was possible[,] Plaintiff had less than two days to amend the complaint." Doc. No. 33 at 3. Moreover, Plaintiff alleges that he did not learn of the facts giving rise the necessity of amendment until the November 16, 2021 conference. *See* Doc. No. 33-5 at 9. Plaintiff also asserts that he had no access to the prison law library and was therefore unable to conduct the necessary research. Doc. No. 33 at 3. And specifically regarding the misidentification of Lieutenant Ferrel, Plaintiff explains that he had bi-lateral eye surgery since his last review of the document that contained the correct spelling. *See* Doc. No. 33-1 ("Pl. Decl.") ¶ 8.

22

23

24

25

26

Therefore, Plaintiff has demonstrated he was unable to comply with the November 18, 2021 deadline despite diligent efforts. Moreover, the Court cannot say that Plaintiff was not diligent in bringing this motion once it became clear that he could not comply. Instead, the Court finds that Plaintiff's efforts—researching and drafting an amended

27

28

---

[5] Both parties are reminded that settlement discussions are confidential and statements made therein should not be brought to the Court's attention. *See* Doc. No. 38 at 16; Doc. No. 33 at 5.

complaint and motion for leave to amend (accompanied by a memorandum of points and authorities, declaration, and evidence), in less than three months, as a *pro se* prisoner—amount to reasonable diligence.  Accordingly, the Court finds that Plaintiff has demonstrated good cause to modify the operative Scheduling Order under Rule 16(c)(4).

**B.    Rule 15 Amendment**

Having found good cause, the Court next considers whether amendment is warranted under Rule 15.  Before turning to the proposed amendments, the Court reiterates the factual allegations and claims as alleged in the Complaint.

Generally speaking, Plaintiff's Complaint focuses on the alleged retaliatory destruction of his typewriter during a cell search on June 8, 2019, and the subsequent retaliatory cover-up by RJD officials throughout the grievance process.  *See* Compl. at 4.  In his Complaint, Plaintiff initially asserted three causes of action against all named Defendants pursuant to § 1983: (1) First Amendment retaliation, *see* Compl. at 13; (2) conspiracy to retaliate, *see id.* at 14; and (3) Fourteenth Amendment due process, *see id.* at 20.  In its Screening Order, the Court dismissed Plaintiff's Fourteenth Amendment claim in its entirety, *see* Doc. No. 4 at 7–8, and dismissed the remaining two claims against Warden Covello, *see id.* at 10.

A review of the proposed First Amended Complaint reveals that the factual allegations remain largely unchanged, as are the first two claims.  *Compare* Compl. *with* Doc. No. 34 ("FAC").  With his First Amended Complaint, Plaintiff seeks to reassert a Fourteenth Amendment claim, *see* FAC at 26, and also bring a due process claim under the California Constitution, *see id.* at 24.  Additionally, Plaintiff seeks to add the Secretary of the CDCR, Kathleen Allison, as a defendant to all claims, *see* FAC at 19, as well as add Warden Covello back into the case, *see id.* at 20.  Finally, Plaintiff seeks to rename "H. Terrel" to "H. Ferrel."  *See, e.g.*, FAC at 1.

In order to appropriately analyze the Rule 15 factors, the Court addresses the parties Plaintiff seeks to name, and the claims he seeks to include, via his amendment, separately.

1        *1.*    *H. Ferrel*

2        As discussed above, Plaintiff previously named Defendant "H. Terrel" and now

3 seeks leave to amend to correctly name Lieutenant H. Ferrel.  To the extent Plaintiff

4 needs leave of the Court to amend his Complaint in this respect, the Court finds that the

5 Rule 15 factors weigh in his favor.  There is no indication of bad faith or improper

6 motive.  Nor has Plaintiff previously sought to amend.  Plaintiff explains that he did not

7 learn of his misspelling "until some three weeks after the cutoff date."  Doc. No. 33-5 at

8 9.  To that end, as noted above, Plaintiff asserts that he discovered the misspelling upon

9 reinspecting the documents after receiving bi-lateral eye surgery.  Pl. Decl. ¶ 8.  For these

10 same reasons, the Court finds that there has been no undue delay or dilatory motive.

11 Defendants' arguments to the contrary, *see* Doc. No. 38 at 16–17, are not persuasive.  It

12 is reasonable that Plaintiff could have misread Lieutenant Ferrel's name even if it was

13 "prominently displayed on his uniform." *Id.* at 17.  Plaintiff plausibly explains why he

14 did not learn of the mistake until early December 2021.  *See* Doc. No. 26.  The only

15 parties that may have had any knowledge of the spelling error prior to then would be

16 Defendants—his colleagues—and defense counsel, who was ordered to investigate the

17 matter by Judge Gallo in November 2021.  *See* Doc. Nos. 25, 26.  So for that reason as

18 well, the Court finds that there is no prejudice to Defendants at this time.  Moreover, the

19 Court finds that allowing amendment will not prejudice Lieutenant Ferrel because while

20 discovery has commenced, it has necessarily encompassed the claims against him, albeit

21 in his absence.  *See* Doc. No. 44.  Further, discovery has not yet closed—in fact, it is

22 stayed.  *See* Doc. No. 52.  And finally, the Court finds that amending to properly name

23 Lieutenant Ferrel as a defendant is not futile because a claim is pending against him as

24 the "Senior Hearing Officer" who conducted the disciplinary hearing following the June

25 8, 2019 event.  *Compare* Compl. at 2, 8, *with* Doc. No. FAC at 2, 9.  Accordingly, the

26 Court **GRANTS** Plaintiff's request for leave to amend to correctly name Lieutenant

27 Ferrel.

28

### 2.   *CDCR Secretary Allison*

CDCR Secretary Kathleen Allison was not named as a defendant in the Complaint. According to Plaintiff, his basis to name Secretary Allison did not become known until the November 16, 2021 conference.  *See* Pl. Decl. ¶10.  Therefore, the Court finds that neither the bad faith nor undue delay factors weigh against amendment to include Secretary Allison.  Nor has Plaintiff previously sought to amend.

Turning to futility, however, Plaintiff fails to plausibly allege Secretary Allison's participation in the alleged retaliation or conspiracy.  As Defendants argue, Secretary Allison was not appointed to her current position until October 1, 2020, and therefore could not have participated in the events at issue as Secretary of the CDCR in June 2019. Further, the proposed First Amended Complaint is devoid of any allegations that Kathleen Allison, as a private individual, conspired with Defendants or participated in any of the events in 2019.  *See Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002) ("A private individual may be liable under § 1983 if she conspired or entered joint action with a state actor.").  Moreover, to the extent Plaintiff contends that Secretary Allison, by way of her regulation governing typewriters, participated in the alleged conspiracy to retaliate against him, *see* Doc. No. 33-5 at 9, the Court finds that Plaintiff fails to plausibly plead a claim against her.  For example, the First Amended Complaint is devoid of any allegations from which the Court could plausibly infer causation.  Accordingly, the Court finds that amendment in this respect would be futile.

However, Plaintiff's motion implicates Rule 19.  Plaintiff cites to Rule 19(a)(1)(A) as one source of authority for bringing his motion, *see* Doc. No. 33 at 1, but the substance of his motion does not address the Rule.  That said, Plaintiff asserts that Secretary Allison is an "indispensable party," *id.* at 4, and that her involvement is "require[d]" to "fully adjudicate this controversy," Doc. No. 33-5 at 9.  To that end, Plaintiff alleges he did not realize the necessity of bringing claims against Secretary Allison until the settlement discussions when it became clear that he could not have his typewriter replaced due to Secretary Allison's regulation.  *Id.* at 15.

Federal Rule of Civil Procedure 19(a) provides that a third party is "necessary" if "in that person's absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A). Complete relief under Rule 19(a)(1)(A) means "consummate rather than partial or hollow relief." *EEOC. v. Peabody W. Coal Co.*, 400 F.3d 774, 780 (9th Cir. 2005) ("*Peabody I*"). "To be 'complete,' relief must be 'meaningful relief *as between the parties*.'" *Alto v. Black*, 738 F.3d 1111, 1126 (9th Cir. 2013) (quoting *Disabled Rights Action Comm. V. Las Vegas Events, Inc.*, 375 F.3d 861, 879 (9th Cir. 2004)). "[B]y definition, parties to be joined under Rule 19 are those against whom no relief has formally been sought but who are so situated as a practical matter as to impair either the effectiveness of relief or their own or present parties' ability to protect their interests." *Peabody I*, 400 F.3d at 783 (internal quotation marks omitted).

Plaintiff seeks equitable relief in the form of replacement of his typewriter. *See* Compl. at 22; FAC at 29. While he also seeks a plethora of declaratory relief as well as compensatory damages, it is clear that replacing his typewriter is the primary redress Plaintiff seeks by way of this litigation. It is also well-known at this juncture that such relief cannot be granted in Secretary Allison's absence. Secretary Allison is the CDCR's rule-making authority, and it would appear that her rule prohibits the typewriter's replacement.[6] As the Ninth Circuit has explained, "Rule 19(a) 'defines the persons whose joinder in the actions is *desirable*' in the interests of just adjudication." *Peabody I*, 400 F.3d at 779 (quoting Fed. R. Civ. P. 19 Advisory Committee Note (1966)). Such desirable persons are "persons having an interest in the controversy, and *who ought to be made parties, in order that the court may act*." *Id.* (quoting *Shields v. Barrow*, 58 U.S. 130, 139 (1854) (emphasis added)). Should Plaintiff succeed, the Court cannot order Defendants to replace Plaintiff's typewriter because to do so would be to order

---

[6] Title 15 of the California Code of Regulations, section 3190 incorporates by reference the CDCR's Authorized Personal Property Schedule ("APPS"). 15 Cal. Code Regs. § 3190(b). As relevant, the APPS seems to prohibit the typewriter Plaintiff had, but states that "[e]xisting memory typewriters may be retained with owner's manual until no longer operational." *See* Doc. No. 51-3 at 45.

Defendants to violate the CDCR's rule.  Accordingly, absent Secretary Allison, Plaintiff cannot be afforded complete, but merely "hollow" relief.

Defendants do not argue that Secretary Allison is not a necessary party.  Instead, they assert that "to allow the Joinder of CDCR Secretary Allison . . . Would be a Misapplication of the law of Joinder."  Doc. No. 38 at 11.  However, in so arguing, Defendants cite to Rule 20, which governs permissible joinders, and Rule 18, governing joinder of claims.  *See id.*  As discussed above, Secretary Allison is a necessary party given that Plaintiff cannot obtain complete relief in her absence.  Accordingly, Rules 18 and 20 are inapposite to the analysis.  Therefore, the Court finds that Plaintiff has met his burden of demonstrating that Secretary Allison is a necessary party to this action.

Neither party addresses whether Secretary Allison's joinder is feasible.  There are three instances when joinder is not feasible: "when venue is improper, when the absentee is not subject to personal jurisdiction, and when joinder would destroy subject matter jurisdiction."  *Peabody I*, 400 F.3d at 779.  Absent any argument to the contrary, the Court finds that joinder of Secretary Allison does not fall into either of these categories.

Accordingly, the Court finds that Secretary Allison is a necessary party to this litigation and that her joinder at this juncture is feasible.  The Court therefore **GRANTS** Plaintiff's motion in this respect and **JOINS** Secretary Allison pursuant to Rule 19(a)(1)(A) as a Defendant in her official capacity with respect to Plaintiff's request for equitable relief in the form of replacement of his typewriter.

### 3.   *Warden Covello*

The Court previously dismissed Plaintiff's claims against Warden Covello for failure to plausibly allege that he, either directly or as part of the alleged conspiracy, retaliated against Plaintiff.  *See* Doc. No. 4.  In the proposed First Amended Complaint, Plaintiff now includes additional allegations as to Warden Covello.  In particular, that Defendant Ortiz "apprised [D]efendant Covello of his action denying the appeal and intent to inhibit [P]laintiff from further legal activity" and that therefore Covello "knew of the retaliatory agreement by the other defendants . . . and had the power to thwart this

1  plot or conspiracy, and failed to thwart it in violation of 42 U.S.C. § 1986." FAC at 13.

2  The Court reiterates that it finds no indication of bad faith in seeking amendment.

3  Moreover, Plaintiff's new allegations reveal that amendment may not be futile, and

4  Plaintiff has not previously sought to amend. However, unlike the discussion above

5  regarding the proposed amendments as to Lieutenant Ferrel and Secretary Allison, the

6  Court finds that undue delay and prejudice strongly weigh against amendment in this

7  respect. Plaintiff has been on notice since June 2021 that his allegations were insufficient

8  to state a retaliation or conspiracy claim against Warden Covello. Even considering the

9  parties' settlement efforts, Plaintiff had some four months to cure the defects, and he

10 provides no explanation for why did not seek to amend in that time. Accordingly, the

11 Court finds that the Rule 15 factors weigh against amendment to rename Warden Covello

12 and **DENIES** Plaintiff's motion on that basis. Warden Covello therefore remains

13 dismissed from this action. *See* Doc. No. 4.

14  4.  *Substantive Due Process Claims*

15 The Court previously dismissed Plaintiff's Fourteenth Amendment due process

16 claim in its entirety. *See* Doc. No. 4 at 7–8. In his proposed First Amended Complaint,

17 Plaintiff seeks to bring a substantive due process claim against all Defendants pursuant to

18 the Fourteenth Amendment, U.S. Const. amend. XIV, and the California Constitution,

19 Cal. Const. art. I, §7(a). *See* FAC at 24–26.

20 The Court finds that there is no bad faith or prior amendments weighing against

21 including substantive due process claims. This is Plaintiff's first attempt at amendment.

22 Discovery has barely begun, and it has been stayed upon Defendants' motion. Further,

23 Plaintiff has clearly undertaken significant, timely efforts to legally and factually support

24 all potential claims stemming from the initial June 8, 2019 cell search. There is,

25 however, undue delay and prejudice. As noted above, Plaintiff has been on notice that

26 his due process allegations were insufficient since June 2021, and he does not provide a

27 sufficient explanation for his failure to amend in this respect sooner. Moreover, because

28 Plaintiff did not timely seek to cure his Fourteenth Amendment claim, this case has

proceeded solely within the retaliation/conspiracy context.  To include substantive due process claims now would fundamentally alter this litigation.

Turning to futility, Defendants argue that leave to amend to include a state law due process claim would be futile because Plaintiff failed to comply with California Government Code § 911.2.  *See* Doc. No. 38 at 15.  The California Tort Claims Act, Cal. Gov. Code § 900 *et seq.* ("CTCA"), establishes certain conditions precedent to filing a lawsuit seeking money damages against a public entity or employee.  However, section 950.2, which prescribes the applicability of the condition as it relates to suits against employees, clearly states that the condition precedent delineated in section 911.2 only applies to acts or omissions within the employee's scope of employment.  Cal. Gov. Code § 950.2.  As the Court has previously held, Plaintiff plausibly pleads that Defendants' actions were retaliatory and unconstitutional.  Unconstitutional acts are not within a government employee's express or implied powers and are therefore beyond the scope of their employment.  *See, e.g.*, *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 690–92 (1949) (discussing the non-applicability of the sovereign immunity doctrine where a government agent acts unconstitutionally and therefore beyond the scope of his authority); *Church of Scientology Int'l v. Kolts*, 846 F. Supp. 873, 879 (C.D. Cal. 1994) (same); *see also Golden Day Sch., Inc v. Pirillo*, 118 F. Supp. 2d 1037, 1048 (C.D. Cal. 2000).

Moreover, the CTCA's condition precedent only applies to suits seeking monetary damages.  In terms of Secretary Allison's joinder, Plaintiff is not permitted to seek monetary damages against her; she is joined solely with respect to his request for equitable relief.  Further, it is not clear that Plaintiff could even seek or recover monetary damages for a state law due process claim against any defendant.  No California court has decided whether damages are available to plaintiffs who allege violations of section 7(a), at least not when it comes to property.  *See Rios v. Cty. of Sacramento*, No. 2:19-cv-00922-KJM-DB, 2021 U.S. Dist. LEXIS 189205, at *46–47 (E.D. Cal. Sep. 29, 2021); *Walls v. Cent. Contra Costa Transit Auth.*, No. 08-0224, 2012 U.S. Dist. LEXIS 22076,

at *7 (N.D. Cal. Feb. 22, 2012).  And the few district courts to consider the question have held they are not.  *See McDaniel v. Diaz*, No. 1:20-cv-00856-, 2020 U.S. Dist. LEXIS 238840, at *100 (E.D. Cal. Dec. 17, 2020); *cf. Pimentel v. City of L.A.*, No. CV 14-1371 FMO (Ex), 2015 U.S. Dist. LEXIS 198053, at *27 (C.D. Cal. Sep. 29, 2015); *Dragasits v. Rucker*, No. 18-cv-0512-WQH-AGS, 2020 U.S. Dist. LEXIS 8851, at *14 (S.D. Cal. Jan. 17, 2020).  Accordingly, the CTCA is not a basis for finding that leave to amend to include a California due process claim would be entirely futile.

With that in mind, and because California's Due Process Clause is "identical in scope with the federal due process clause," *Owens v. City of Signal Hill*, 154 Cal. App. 3d 123 (1984); *Sanchez v. City of Fresno*, 914 F. Supp. 2d 1079, 1116 (E.D. Cal. 2012), the Court provides one futility analysis as to both due process claims.

The Due Process Clause is the source of three different types of constitutional protection: it guarantees fair procedure, referred to as "procedural due process"; it incorporates specific protections defined in the Bill of Rights; and it contains a substantive component, referred to as "substantive due process," which bars certain arbitrary government actions "regardless of the fairness of the procedures used to implement them."  *See Gallo v. Miller*, No. 91-15697, 1993 U.S. App. LEXIS 179, at *3 (9th Cir. Jan. 4, 1993) (quoting *Daniels v. Williams*, 474 U.S. 327, 337 (1986) (Stevens, J., concurring)).  Plaintiff previously asserted violations of both substantiative and procedural due process.  *See* Compl. at 20.  And accordingly, the Court explained that Plaintiff failed to state a due process claim, Doc. No. 4 at 8 (citing *Hudson v. Palmer*, 468 U.S. 517, 520, 533–34 (1984)); any unauthorized intentional deprivation of property by Defendants does not amount to a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment because California law provides an adequate post-deprivation remedy for property deprivations, *see Barrett v. Centoni*, 31 F.3d 813, 816–17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810–895).

Plaintiff does not reassert a procedural due process violation.  Instead he seeks to bring substantive due process claims.  *See* FAC at 26.  The Supreme Court has aptly

juxtaposed these two Due Process Clause protections:

> By requiring the government to follow appropriate procedures when its agents decide to "deprive any person of life, liberty, or property," the Due Process Clause promotes fairness in such decisions. And by barring certain government actions regardless of the fairness of the procedures used to implement them, *e. g., Rochin, supra*, it serves to prevent governmental power from being "used for purposes of oppression," *Murray's Lessee v. Hoboken Land & Improvement Co.*, 18 How. 272, 277 (1856) (discussing Due Process Clause of Fifth Amendment).

*Daniels*, 474 U.S. at 331–32.

The holding in *Hudson* is, by its very terms, limited to claims for procedural violations. 468 U.S. at 533 ("Accordingly, we hold that an unauthorized intentional deprivation of property by a state employee does not constitute *a violation of the procedural requirements* of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available.") (emphasis added). Therefore, it is not relevant to the substantive due process analysis that Plaintiff had an adequate post-deprivation remedy under state law and accordingly Plaintiff does not seek to reverse the Court's screening order by way of amendment. *See* Doc. No. 38 at 5, 9, 12.

Nonetheless, the Court finds that amendment to include substantive due process claims under either the federal or California constitutions would be futile. The Due Process Clause "forbids the government from depriving a person of life, liberty, or property in such a way that 'shocks the conscience' or 'interferes with rights implicit in the concept of ordered liberty.'" *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "[T]he substantive component of the Due Process Clause is violated by executive action only when it 'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'" *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998) (quoting *Collins v. Harker Heights*, 503 U.S. 115, 128 (1992)). And "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" *Id.* at

846 (quoting *Collins*, 503 U.S. at 128).

As the Ninth Circuit has explained, "[s]ubstantive due process has . . . been largely confined to protecting fundamental liberty interests such as marriage, procreation, contraception, family relationships, child rearing, education and a person's bodily integrity, which are 'deeply rooted in this Nation's history and tradition.'" *Franceschi v. Yee*, 887 F.3d 927, 937 (9th Cir. 2018) (quoting *Moore v. East Cleveland*, 431 U.S. 494, 503 (1977)); *see also Forbes v. Cnty. of San Diego*, No. 20-CV-00998-BAS-JLB, 2021 WL 843175, at *5 (S.D. Cal. Mar. 4, 2021). Put another way, areas not explicitly or aptly encompassed by another constitutional provision. Instead, when "a constitutional claim is covered by a specific constitutional provision . . . the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989)); *Lewis*, 523 U.S. at 843 (same).

Plaintiff's substantive due process claims are based entirely on the same set of facts and allegations that he brings in support of his retaliation claims. As stated, Plaintiff's claim for destruction of his typewriter is covered by, at least, the First Amendment's protection from retaliation and therefore his proposed First Amended Complaint fails to state a cognizable substantive due process claim. Accordingly, the Court finds that amendment to include substantive due process claims would be futile. Therefore, undue delay, prejudice, and futility weigh against amendment and as such the Court **DENIES** Plaintiff's motion to amend in this respect.

## C.    Summary

In sum, the Court **GRANTS** Plaintiff's motion for leave to amend to correctly name Lieutenant H. Ferrel and **JOINS** Secretary Allison in her official capacity solely with respect to Plaintiff's request for equitable relief in the form of replacement of his typewriter. The Court **DENIES** the remainder of Plaintiff's request for leave to amend.

### III. EVIDENTIARY OBJECTIONS

Rather than respond to Plaintiff's Separate Statement, Defendants have lodged forty-five (45) evidentiary objections: twenty-two (22) to facts contained in Plaintiff's Separate Statement, *see* Doc. No. 58-1, and twenty-three (23) to paragraphs within Plaintiff's declaration offered in support of his opposition, *see* Doc. No. 58-2.

The Court categorically **OVERRULES** Defendants' objections to Plaintiff's Separate Statement of Disputed *Facts* because they are merely disputes about the meaning or import of facts that are styled as evidentiary objections. *See e.g.*, *Cooper v. United Air Lines, Inc.*, 82 F. Supp. 3d 1084, 1098 (N.D. Cal. 2015); *Fulfer v. Winco Holdings, Inc.*, No. 1:15-cv-00999-TLN-EPG, 2019 U.S. Dist. LEXIS 185492, at *19 (E.D. Cal. Oct. 24, 2019).

Having reviewed the remaining objections, the Court finds that they are either unnecessary and inappropriate for summary judgment, or without merit.

The Court **OVERRULES** Defendants' general objection to Plaintiff's declaration. Such a general objection, absent any specific evidentiary principles or argument, cannot be sustained. Contrary to Defendants' assertion, Plaintiff's declaration does not merely "re-allege the claims in his Complaint and state his beliefs regarding his allegation of retaliation and conspiracy." Doc. No. 58-2 at 1. His declaration, to the extent it is relevant, contains factual details of events, is internally consistent, and is made based upon personal knowledge. The mere fact that it may be considered by the opposing party "self-serving" is not a valid basis to disregard it in its entirety. *See Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 498 (9th Cir. 2015).

Turning to the Defendants' specific objections, as the Ninth Circuit recently explained:

To begin, objections for relevance are generally unnecessary on summary judgment because they are "duplicative of the summary judgment standard itself." *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006)). On summary judgment, a court must determine whether the

evidence viewed in the light most favorable to the non-moving party creates a "genuine dispute as to any material fact" that must be resolved at trial. Fed. R. Civ. P. 56(a). And under Federal Rule of Evidence 401, evidence is relevant if it "has any tendency to make a fact more or less probable" and that fact "is of consequence in determining the action." Fed. R. Evid. 401. Putting these two standards together, if evidence submitted on summary judgment could create a genuine dispute of material fact, it is, by definition, "of consequence in determining the action," and therefore relevant. *Id.* Conversely, if the submitted evidence does not create a genuine dispute of material fact, there is no need for the court to separately determine whether it is relevant because, even assuming it is not, it will not affect the ultimate summary judgment ruling.

*Sandoval v. Cty. of San Diego*, No. 18-55289, 2021 U.S. App. LEXIS 866, at *14–15 (9th Cir. Jan. 13, 2021). Consequently, Defendants "would be better served to 'simply argue' the import of the facts reflected in the evidence rather than expending time and resources compiling laundry lists of relevance objections." *Id.* at *15 (quoting *Burch*, 433 F. Supp. 2d at 1119). Moreover,

> "[a]t the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003); *see* Fed. R. Civ. P. 56(c)(2). If the contents of a document can be presented in a form that would be admissible at trial—for example, through live testimony by the author of the document—the mere fact that the document itself might be excludable hearsay provides no basis for refusing to consider it on summary judgment. *Fraser*, 342 F.3d at 1036–37 (holding that the plaintiff's diary could be considered on summary judgment because she could testify consistent with its contents at trial).

*Id.* at *16.

Defendants provide a laundry list of boilerplate recitations of evidentiary rules that are largely devoid of any specific argument or are duplicative of Rule 56 itself. Plaintiff is a *pro se* prisoner. The Court is well-equipped to discern factual evidence from argument or conclusion and is similarly capable of identifying what is relevant to the issues before it.

Moreover, the Court need only "rule on evidentiary objections that are material to its ruling." *Norse v. Cty of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010). Defendants only object to one paragraph in Plaintiff's declaration that is material to the Court's ruling below. In paragraph 7, Plaintiff describes a conversation he had with Defendant Ortiz during his grievance appeal. Doc. No. 57 at 7. Defendants argue Plaintiff's narrative of Ortiz's statements "lack foundation and are improper hearsay. Fed. R. Evid. §§ 402, 802." *See* Doc. No. 58-2 at 6.

Plaintiff does not lack the foundation to testify to a conversation he was a party to. And Defendant Ortiz's statements are not hearsay. *See* Fed. R. Evid. 801(d)(2). Accordingly, the Court expressly **OVERRULES** Defendants' objections to this portion of Plaintiff's declaration. And for the reasons discussed above, the Court **OVERRULES** the remaining twenty-two (22) objections as immaterial, boilerplate, and inappropriate at summary judgment.

## IV. Summary Judgment

### A.    Legal Standard

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of establishing the basis of its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party has "the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). A fact is material if it could affect the "outcome of the suit" under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if there is sufficient evidence

for a reasonable jury to return a verdict for the non-moving party. *See id.*

If the moving party meets its burden, the nonmoving party must go beyond the pleadings and, by its own evidence or by citing appropriate materials in the record, show by sufficient evidence that there is a genuine dispute for trial. *See Celotex*, 477 U.S. at 324. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A "scintilla of evidence" in support of the nonmoving party's position is insufficient; rather, "there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson*, 477 U.S. at 252. Moreover, "a party cannot manufacture a genuine issue of material fact merely by making assertions in its legal memoranda." *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982).

Federal Rule of Civil Procedure 56(e) compels the non-moving party to "set out specific facts showing a genuine issue for trial" and not to "rely merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586–87. Rule 56(c) mandates the entry of summary judgment against a party who, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322–23.

The Ninth Circuit has "held consistently that courts should construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly." *Soto v. Sweetman*, 882 F.3d 865, 872 (9th Cir. 2018) (quoting *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010)). While prisoners are relieved from strict compliance, they still must "identify or submit some competent evidence" to support their claims. *Soto*, 882 F.3d at 872.

## B.   Discussion

Defendants move for summary judgment, arguing that Plaintiff failed to exhaust his administrative remedies. *See* Doc. No. 44. "The Prison Litigation Reform Act of

1995 (PLRA) mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." *Ross v. Blake*, 578 U.S. 632, 635, (2016) (quoting 42 U.S.C. § 1997e(a)). "There is no question that exhaustion is mandatory under the PLRA." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citation omitted). The PLRA also requires that prisoners, when grieving their appeal, adhere to CDCR's "critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 91 (2006). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218. Exhaustion serves important objectives, including "alert[ing] prison officials to 'the nature of the wrong for which redress [is] sought,'" and allowing prisons "to take corrective action where appropriate." *Fuqua v. Ryan*, 890 F.3d 838, 844 (9th Cir. 2018) (quoting *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009); *see also Jones*, 549 U.S. at 204 (explaining that the exhaustion requirement is based on the important policy concern that prison officials should have "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court").

The "exhaustion requirement does not allow a prisoner to file a complaint addressing non-exhausted claims." *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010). Therefore, regardless of the relief sought, a prisoner must pursue an appeal through all levels of a prison's grievance process as long as that process remains available to him. "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.' Once that is no longer the case, then there are no 'remedies . . . available,' and the prisoner need not further pursue the grievance." *Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)). "The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" *Ross*, 578 U.S. at 648; *see also Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010) (explaining that PLRA does not require exhaustion when circumstances render administrative remedies "effectively unavailable"). Grievance procedures are available if they are "'capable of use' to obtain 'some relief for the action complained of.'" *Ross*,

578 U.S. at 633 (quoting *Booth*, 532 U.S. at 738); *see also Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) ("To be available, a remedy must be available 'as a practical matter'; it must be 'capable of use; at hand.'") (quoting *Albino v. Baca*, 747 F.3d 1162, 1171(9th Cir. 2014)).

In *Ross*, the Supreme Court noted "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." 578 U.S. at 633. These circumstances arise when: (1) the "administrative procedure . . . operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) the "administrative scheme . . . [is] so opaque that it becomes, practically speaking, incapable of use . . . so that no ordinary prisoner can make sense of what it demands;" and (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* (citations omitted).

The Ninth Circuit has found administrative remedies "plainly unavailable" where prison officials "screen out an inmate's appeals for improper reasons," *Sapp v. Kimbrell*, 623 F.3d 813, 823 (9th Cir. 2010), and "effectively unavailable" where they provide the inmate mistaken instructions as to the means of correcting a claimed deficiency, but upon re-submission, reject it as untimely after compliance proved impossible, *see Nunez*, 591 F.3d at 1226.

Because the failure to exhaust is an affirmative defense, Defendants bear the burden of raising it and proving its absence. *Jones*, 549 U.S. at 216; *Albino*, 747 F.3d at 1169 (noting that Defendants must "present probative evidence—in the words of *Jones*, to 'plead and prove'–that the prisoner has failed to exhaust available administrative remedies under § 1997e(a)"). Accordingly, at the summary judgment stage, Defendants must produce evidence proving Plaintiff's failure to exhaust; they are entitled to summary judgment only if the undisputed evidence, viewed in the light most favorable to Plaintiff, shows he failed to fully exhaust his administrative remedies. *Albino*, 747 F.3d at 1166. To that end, Defendants "must first prove that there was an available administrative

remedy and that the prisoner did not exhaust that available remedy." *Williams*, 775 F.3d at 1191. "Then, the burden shifts to the plaintiff, who must show that there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'" *Id.* (quoting *Albino*, 747 F.3d at 1172). "The ultimate burden of proof, however, remains with the defendants." *Id.*

### 1.   CDCR Exhaustion Requirements

The CDCR has established an "administrative remedy" for prisoners like Plaintiff to pursue before filing suit under § 1983. *See Williams*, 775 F.3d at 1191 (citing *Albino*, 747 F.3d at 1172) (quotation marks omitted). Since January 28, 2011, and during the times alleged in Plaintiff's Complaint, Title 15 of the California Code of Regulations, sections 3084 through 3084.9 governed the procedure for an inmate's administrative remedies. *See* Cal. Code Regs., tit. 15 §§ 3084 *et seq.* (repealed).[7] Pursuant to the regulations, in order to properly exhaust, a California prisoner must, within thirty (30) calendar days of the decision or action being appealed, or "upon first having knowledge of the action or decision being appealed," Cal. Code Regs., tit. 15 § 3084.8(b), "use a CDCR Form 602 (Rev. 08/09), Inmate/Parolee Appeal, to describe the specific issue under appeal and the relief requested," *id.* § 3084.2(a). The CDCR Form 602 "shall be submitted to the appeals coordinator at the institution." *Id.* §§ 3084.2(c), 3084.7(a).

If the first level CDCR Form 602 appeal is "denied or not otherwise resolved to the appellant's satisfaction at the first level," *id.* § 3084.7(b), the prisoner must "within 30 calendar days . . . upon receiving [the] unsatisfactory departmental response," *id.*

---

[7] The applicable regulations underwent substantial restructuring beginning in 2020. In particular, on March 25, 2020, and effective June 1, 2020, California Code of Regulations Title 15, sections 3084 through 3084.9 were repealed and replaced with renumbered and amended provisions at sections 3480 through 3487. *See* Cal. Code Regs. tit. 15, §§ 3480–3487 (eff. June 1, 2020). Nonetheless, the Court summarizes and applies the CDCR's grievance process as it operated at the time the events giving rise to this action occurred.

§ 3084.8(b)(3), seek a second level of administrative review, which is "conducted by the hiring authority or designee at a level no lower than Chief Deputy Warden, Deputy Regional Parole Administrator, or the equivalent," *id.* § 3084.7(b), (d)(2).

"The third level is for review of appeals not resolved at the second level." *Id.* § 3084.7(c). "The third level review constitutes the decision of the Secretary of the CDCR on an appeal, and shall be conducted by a designated representative under the supervision of the third level Appeals Chief or equivalent. The third level of review exhausts administrative remedies," *id.* § 3084.7(d)(3), "unless otherwise stated," *id.* § 3084.1(b); *see also* CDCR OPERATIONS MANUAL § 541100.13.

### 2. *Plaintiff's Exhaustion Efforts*[8]

There is one Rules Violation Report stemming from the June 8, 2019 cell search. And it is undisputed that Plaintiff appealed it to the third and highest level of review. *See* Doc. No. 44-3 at 62–64. Defendants argue, however, that Plaintiff's grievance and appeals did not exhaust his retaliation claims. *See* Doc. No. 44-1 at 6. Accordingly, the Court begins by detailing the undisputed material facts concerning the content of the Rules Violation Report and Plaintiff's appeals.

On June 8, 2019, Defendant McWay conducted a search of Plaintiff's cell. Doc. No. 44-5 at 42. McWay issued Plaintiff a Rules Violation Report the following day, logged as No. 6860333, for possession of a cellular phone in violation of rule 3006(a) (the "RVR"). Doc. No. 44-3 at 43. In the RVR, McWay stated:

> On June 8, 2019 at approximately 1030, while performing my duties as Facility C Yard Officer #3, I was assigned to a mass search in Housing Unit 18. During the search I was assigned to search Cell 143 which i[s] solely assigned to Inmate D. Faunce (C53742, FD-18-143L). Prior to my entry of cell 143, K9 Officer conducted brief search utilizing his trained contraband K9. Upon the[ir] completion I was inform[ed] by K9 Officer that the K9 indicated there was possible contraband in a type writer located on the lower

---

[8] These material facts are taken from the parties' declarations and exhibits. These facts are undisputed unless otherwise noted.

bunk. As I inspected the Gray type writer I observed it was missing a screw, and the top was no[t] attached to the bottom. I removed the top and observed that the insides were broken. At this time I discovered a Black Samsung Cellphone and white USB charging cord secreted in the rear of the type writer. I removed the Cellphone and white USB cord and placed then in my Left shirt pocket. I continued my search of cell 143 and discovered on the lower shelf, inside of a state brown cup was a white USB charger. I placed the USB charger in my left shirt pocket. I continued my search of cell 143 with negative results for additional contraband. Inmate Faunce was made aware of this report and informed that any similar behavior would result in further disciplinary action.

*Id.*[9]  The RVR was reviewed and signed by Defendant Godinez on June 11, 2019, and classified and signed by Defendant Martinez on June 17, 2019.  *Id.* at 44.

On July 4, 2019, a disciplinary hearing on the RVR was conducted and Defendant Ferrel found Plaintiff guilty, *id.* at 54, and sanctioned Plaintiff with 90 days' loss of credit, *id.* at 52.

On July 11, 2019, Plaintiff appealed by submitting a Form 602 grievance, logged as No. RJD-C-19-04340 (the "602").  *Id.* at 36.  When asked to "State briefly the subject of your appeal," Plaintiff wrote:

**RETALIATORY DISCIPLINARY ACTION/DESTRUCTION OF TYPEWRITER.**

*Id.*

---

[9] It is unclear whether Plaintiff's typewriter was broken prior to or during the search by McWay.  In his grievance, Plaintiff alleges that his typewriter was working when he left the cell.  *Id.* at 36.  He asserts that McWay "stomped" on it, "ostensibly to open it," and broke the typewriter.  *Id.* at 38.  According to McWay's Cell Search Worksheet, the typewriter was "broken."  Doc. No. 44-5 at 42.  In the RVR, McWay explains that when he found the typewriter, a screw was missing, the top was disconnected from the bottom, and the insides were broken.  Doc. No. 44-3 at 43.  Plaintiff maintains that the typewriter was not merely broken but "destroyed and trashed."  Doc. No. 57 at 4.  Nonetheless, this question of fact is immaterial to the issue of exhaustion.

In the 602, Plaintiff complains, in full:

On 7/4/19, my CDC-115 was heard. Beforehand, I received two photos of a cell phone with the wrong cell number. At the hearing, a third []photo with the right cell number was shown to me. I was found guilty of possessing a [cell] phone. There were no photos or evidence showing the cell phone in my word processor, and no statement from the alleged dog handler whose do purportedly alerted. Officer McWay was not present when the dog·purpo[r]tedly alerted. The SHO refused to address these facts at the hearing. Hence there was/is no evidence to corroborate the allegations and there was no cell phone in my work processor to justify destroying it. Hence, the disciplinary action and destruction of my machine was a retaliatory action for my filing litigation that ended CDCR taking moneys from prisoners for medical/dental co-pays and appliances/equipment on a statewide basis involving millions of dollars bilked from prisoners including myself.

*Id.* at 38.

The first level of review was bypassed. *Id.* at 36. Defendant Ortiz conducted Plaintiff's second level review ("SLR") interview. Doc. No. 44-5 at 21. According to the SLR decision dated August 8, 2019, Plaintiff's 602 presented two issues for appeal:

1. You claim on June 08, 2019, your cell was searched by Correctional Officer T. McWay who claims he discovered a cellular telephone inside of your ML-500 Brother Word Processor for which you received Rules Violation Report (RVR) Log# 6860333, dated June 08, 2019, for Possession of a Cellular Telephone. It is your argument your personal property was intentionally destroyed and you were issued an RVR for an alleged cellular telephone as retaliation for filing litigation against CDCR.

2. You claim you received two photos of a cellular telephone with the wrong cell number noted and allege you were shown a third photo during the hearing with the correct cell number. You also claim there were no photos showing the cellular telephone inside of your word processor.

*Id.* at 21.

As to the first issue, the SLR decision stated that "this is not a Due Process violation" and that "[t]he SLR informed you this appeal was being addressed as a

disciplinary appeal and any concerns regarding your allegation for destruction of personal property or retaliation by Custody staff will not be addressed in this response." *Id.* at 23. The SLR response denied Plaintiff's appeal. *Id.*

Thereafter, Plaintiff appealed to the third level. *Id.* at 18, 20. In his appeal, Plaintiff asserted that:

> The SLR excludes word processor destruction as unrelated issue despite its specific mention in the RVR as place of concealment of the phone and []s[o]urce of dog alert. The lithium ion battery in the machine to power the memory triggered the dog alert. This grievance illustrates a classic example of a retaliatory course of conduct and attempted cover-up: (i) no photos of cell phone in the machine or·sma[s]hed machine itself; (ii) only photo of cell phone and accessories confiscated from who knows where at some other time and place; (iii) two phot[o]s with wrong cell number issued to me (attached)(attached) - one photo with correct cell number sho[]wing phone (not given to appellant); (iv) attached cell search slip alleging machine seals were broken and screw missing. ISU and dog handlers have tools to open appliances. If seals were broken it was unnecessary to smash the machine; (v) it was destroyed rather than given to me per attached 128B General Chrono that I signed, to cover up a retaliatory act and destroy ev[]i[d]ence of such acts. The evidence affixed hereto makes no other sense other than a retaliatory based animus for destroy[i]ng the machine and issu[]i[n]g an RVR to cover it up.

*Id.* at 20.

On December 12, 2019, the Office of Appeals ("OOA") issued a third level appeal decision. Doc. No. 44-3 a 62–63. The OOA stated: "All issues unrelated to the disciplinary processing and hearing must be appealed separately and will not be addressed in this response. The appellant does not exhaust administrative remedies on any unrelated issues not covered in this response." *Id.* at 62.

The OOA "granted in part" Plaintiff's appeal. *Id.* at 62. While the OOA found that Plaintiff "was afforded all the required due process protections" and upheld the guilty finding, it found that RJD did not impose the mandatory penalty associated with a

contraband violation: "loss of family visiting (overnight) program for one year."[10]  *Id.* at 63.

### 3.  Sufficient Notice – Naming of Defendants and "Conspiracy"

As an initial matter, Defendants argue that Plaintiff failed to exhaust because he did not specifically allege a "conspiracy," nor did he identify any Defendants other than McWay by name.  *See* Doc. No. 44-1 at 14.  While the PLRA requires proper exhaustion, meaning compliance with the CDCR's procedural rules, *see Woodford*, 548 U.S. at 91, Defendants do not explain how his grievance was insufficient in this regard, except to assert that it does not contain enough specificity.[11]  As Plaintiff correctly notes, in the Ninth Circuit, a prisoner need not use specific legal terminology or identify each defendant by name:

> Under the PLRA, a grievance "suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010) (quoting *Griffin*, 557 F.3d at 1120). The grievance "need not include legal terminology or legal theories," because "[t]he primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation." *Griffin*, 557 F.3d at 1120. The grievance process is only required to "alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued." *Jones*, 549 U.S. at 219 (citations omitted).

*Reyes v. Smith*, 810 F.3d 654, 659 (9th Cir. 2016).

Therefore, the question is whether Plaintiff's grievance contains sufficient information to put RJD on notice of the wrong alleged in this case.  Plaintiff's claims are based upon the alleged destruction of his typewriter in retaliation for his litigation efforts,

---

[10] How a prisoner can appeal a rules violation and "win," at least in part, with his prize being additional punishment, is unclear.  Also of note is that Defendants' motion, despite being made solely on the basis of exhaustion, makes no reference to the ultimate disposition of the RVR, the 602, or the appeal.

[11] The Court does not address Defendants' specific arguments made for the first time in reply.  *See Graves v. Arpaio*, 623 F.3d 1043, 1048 (9th Cir. 2010).

and the cover-up by fabricating the RVR, finding him guilty, and improperly handling and denying his appeal.  Contrary to Defendants' position, the Court finds that the evidence reveals the 602 contained the necessary retaliation and conspiracy contentions.

Plaintiff plainly stated that the subject of his appeal was retaliatory disciplinary action.  Doc. No. 44-3 at 36.  He called into question the propriety of the evidence submitted against him, including why McWay would have needed to "stomp" on the typewriter if the seals were already broken, that the photographs he timely received had the wrong cell number, and that the only photograph with the correct cell number was not provided to him until the hearing.  *Id.* at 38.  He points out the lack of photographs revealing a phone inside of the typewriter and the absence of a statement from the dog handler who allegedly alerted to the cell phone.  *Id.*  He asserts that there was no evidence to corroborate the allegation and find him guilty.  *Id.*  And he maintains that there was no cell phone in his typewriter.  *Id.*  He concludes: "Hence, the disciplinary action and destruction of my machine was a retaliatory action for my filing litigation that ended CDCR taking moneys from prisoners . . . ."  *Id.*

This is sufficient to put RJD on notice of Plaintiff's allegations that are central to his claims: that McWay destroyed Plaintiff's typewriter in retaliation and that the officers involved in the RVR (Godinez and Martinez) and hearing (Ferrel) covered up the action by fabricating a contraband violation and finding him guilty of it.  Moreover, Defendant Ortiz—who allegedly supervised the controversial search and ordered McWay to fabricate the RVR—was the officer assigned to interview Plaintiff at the second level and denied Plaintiff's appeal.  Doc. No. 44-5 at 21.  Rather than "take corrective action," *Fuqua*, 890 F.3d at 844, Ortiz allegedly perpetuated the retaliation by mishandling the appeal.  Plaintiff then complained to the third level that the SLR wrongly excluded the issue of the typewriter's destruction and again complained of retaliation, no less than three times.  Doc. No. 44-5 at 20.  Nonetheless, the OOA did not address the issue because, based on Defendant Ortiz's handling of the 602, it was not properly presented for appeal.

While Plaintiff's 602 only identifies McWay by name, according to Plaintiff's unopposed declaration, Defendant Ortiz told him that "to his knowledge there was no written procedure or mechanism to add parties . . . ." Doc. No. 57 at 8. Further, Defendants cannot argue the RJD officials were unaware of the involvement of officers other than McWay because Plaintiff complained that the entire process, from the cell search to the initial appeal, was tainted by retaliation, and RJD could have easily identified who partook in those events. *See Reyes*, 810 F.3d at 659 (citing *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) (explaining that the inmate "complained about an administrative decision . . . and it belies reason to suggest that prison administrators at [the prison] were unaware of who was responsible for that decision")). The Court therefore concludes that Plaintiff's 602 is sufficient to put RJD officials on notice of the wrongs alleged in this case. Accordingly, the Court **DENIES** Defendants' motion on this basis.

### 4.   *Remaining Administrative Remedies*

Because exhaustion is an affirmative defense, Defendants must first put forth sufficient undisputed evidence establishing that an administrative remedy remained available that Plaintiff failed to pursue. For the reasons set forth below, the Court concludes that Defendants fail to meet their burden.

In light of the undisputed fact that Plaintiff appealed the 602 to the highest level, Defendants assert that some *other* remedy remained available to Plaintiff. Defendants proffer the following narrative: Plaintiff complained of due process in his grievance, his appeals only address due process, and thus he did not exhaust the issue of retaliation. *See* Doc. No. 44-1 at 12–13. However, Defendants' position is untenable for summary judgment.

As discussed above, the 602 reveals that Plaintiff complained of retaliation. It is the only point addressed in the 602's brief description and a plain reading of the 602's content reveals that retaliation was a primary concern. Contrary to Defendants' position, he did not merely mention retaliation as an unrelated side point. *See* Doc. No. 44-1 at 13

(arguing that "Plaintiff *also* made a general and conclusory allegation of the 'destruction of [word processor]' and the later occurring disciplinary action as retaliatory, but that is all that is mentioned in that regard") (emphasis added).  Thus, it is not obvious, undisputed, or clear that Plaintiff's 602 complained of due process and not retaliation.

At the first level review, RJD—specifically, Defendant Ortiz—derived two unrelated issues from the 602.  Whether this interpretation of the 602 was reasonable is not appropriate for summary judgment, and accordingly the Court will not opine on the point.  However, there are two competing interpretations.  Under Defendants' view, the 602 presented two unrelated issues: retaliation and due process.[12]  *See* Doc. No. 44-5 at 21 (identifying two issues in the 602).  According to Plaintiff, however, the issues are related and arise from the same set of core facts stemming from the retaliatory destruction of the typewriter.  Doc. No. 57 at 7.

Even under Defendants' interpretation of the evidence—an inference they are not entitled to on summary judgment, *see, e.g.*, *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997) *(*citing *Anderson*, 477 U.S. at 248)—the issue plainly turns on what was known as the one-issue rule, California Code of Regulations Title 15, section 3084.2.[13]  Plaintiff appealed the 602 to the highest level, and the only reason retaliation was not substantively addressed, and thus conclusively exhausted, was because of the rule.  According to Defendants, Plaintiff's retaliation claim in the 602 was properly rejected under the rule and Plaintiff failed to file a second grievance.  Doc. No. 44-1 at 7.  However, in order to grant Defendants' motion, the Court must find that the evidence

---

[12] Defendants curiously argue that the 602 presented the following two issues: "(1) allegations of violation of due process in his discipline hearing and (2) Plaintiff's request to expunge the RVR for the violation of possession of contraband received in conjunction with the cell search."  Doc. No. 44-1 at 8.  Importantly, the word "retaliation" is missing from this characterization.  And it is not a reasonable interpretation of the plain language of the two issues stated in the SLR response, as transcribed above.

[13] As mentioned *supra* note 7, the regulations have been substantially restructured.  One such amendment is that now, "grievances are allowed to contain unlimited claims."  Le Decl. ¶ 7.

reveals the following undisputed facts: (1) that the 602 presented two unrelated issues; (2) that Plaintiff was duly informed of the one-issue rule and how to cure the defect, and thus how to exhaust the retaliation claim; and (3) Plaintiff did not follow those available and understood instructions.  With this in mind, it is clear that Defendants' motion must be denied.

Defendants fail to put forth sufficient evidence regarding the one-issue rule. Defendants' only evidence of the rule is couched in H. Le's declaration and insufficient. *See* Le Decl. ¶ 7.  As the substance, interpretation, and application of the rule is vital to the issue of exhaustion before the Court, Defendants have failed to carry their burden of proving that an administrative remedy remained available to Plaintiff.  *See Brown v. Valoff*, 422 F.3d 926, 936–37 (9th Cir. 2005) (explaining that a defendant must put forth "relevant evidence" such as the applicable statutes and regulations).  For this reason, the Court **DENIES** Defendants' motion.

### 5.   *Practical Availability of a Second 602*

Assuming Defendants put forth sufficient evidence regarding the one-issue rule, Plaintiff has met his burden of demonstrating that such an administrative remedy under the rule was unavailable to him.  Defendants contend that "[t]hroughout the grievance process it was made clear to Plaintiff that, for grievance RJD 19-04340, the one issue that was to be addressed was Plaintiff's allegations of insufficient due process . . ." and he was "thus put on notice that to exhaust any other issues . . . he was required to file a separate grievance."  Doc. No. 44-1 at 13.  But Defendants' only evidence in support of this position is in the SLR response.  As noted above, the decision states that:

> The SLR informed you this appeal was being addressed as a disciplinary appeal and any concerns regarding your allegation for destruction of personal property or retaliation by Custody staff will not be addressed in this response and are to be addressed as a separate appeal issue in accordance with CCR, Title 15, Section 3084.2

Doc. No. 44-5 at 23.

It is unclear if this statement is sufficient to accomplish the task.  The portion of this response addressing Plaintiff's retaliation claim indicates *first* that it "is not a Due Process violation," *id.* at 22, begging the question of why it needed to be.  The response does not explain why or on what authority RJD officials selected the due process issue to be addressed and rejected the retaliation issue.  *Cf. Loftis v. Hadjadj*, No. 3:16-cv-2094-BTM-KSC, 2017 U.S. Dist. LEXIS 110741, at *12 (S.D. Cal. July 14, 2017) (finding "the responses to [prisoner's] grievances were not necessarily instructive and may not have been proper").  As the Ninth Circuit has explained, a defendant who bears the burden of the affirmative defense of exhaustion must put forth "relevant evidence" such as "information provided to the prisoner concerning the operation of the grievance procedure in this case," and that this evidence "is pertinent because it informs our determination of whether relief was, as a practical matter, 'available.'"  *Brown*, 422 F.3d at 937.

Moreover, the SLR response clearly indicates that there was a conversation about the rule between Plaintiff and someone at the SLR.  Regarding that conversation, Plaintiff explains under penalty of perjury:

Seventh, On or about 8/7/19, the SLR was conducted by defendant C/Lt. E. Ortiz, who stated that he was the Institution Appeals Coordinator and that whatever he decided is what Warden P. Covello's ruling would be.  I believed that a decision had already been made against me.

Ortiz then stated that any issue involving the typewriter was a separate issue from the due process issues from the RVR hearing.  ***When I quoted 15 CCR 3084.2(a)(1) regarding related issues and that the retaliatory sequence of events made the destruction a very related issue as arising from the same core set of facts, Ortiz arbitrarily stated that it was his decision to disallow it but would not explain why.***  Ortiz also stated that he was denying the appeal at the Second Level despite there being no photos showing a cell phone in my typewriter or cell and no statement from the K-9 Officer who apparently discovered it by dog alert.

I then asked Ortiz about the procedure for adding parties or other additional information to this appeal, or did I need to file a second appeal alleging the same core set of facts.  ***Ortiz said that another appeal based on***

*the same core set of facts or incident but adding other persons or facts would be duplicating the appeal and would be rejected as such, as well as being untimely and also rejected.*

Eighth, I asked Ortiz about the procedure for adding other persons or additional information to this appeal, and the mechanism for doing so and when. Ortiz stated that to his knowledge there was no written procedure or mechanism to add parties or information pursuant to 15 CCR 3084.2(a)(1) once it was responded to at the First Level of Review. From this conversation, I reasonably believed that any further appeals involving my typewriter's destruction or any other involved persons would be rejected and an act of futility to pursue it administratively particularly after the defendants cancelled the First Level.

Doc. No. 57 at 7–8 (emphasis added).[14]

Thus, Plaintiff has put forth evidence that any attempt to file a second 602 would be futile—*i.e.*, that any remaining administrative remedy under the one-issue rule was unavailable to him. Defendants put forth no evidence to rebut Plaintiff's narrative of this conversation. Defendants were on notice of the need to come forward with all of their evidence in support of this motion, and they had every incentive to do so. Defendants have put the matter of exhaustion before the Court, and they had ample opportunity to properly identify the dispositive issues and provide evidence to carry their burden of proof. The relevant evidence is within their knowledge and control: Defendant Ortiz does not declare anything at all, nonetheless a different version of the conversation. Accordingly, the Court finds that Defendants "had a full and fair opportunity to ventilate the issues involved," *Albino*, 747 F.3d at 1177 (quoting *Cool Fuel, Inc. v. Connett*, 685

---

[14] On May 6, 2022, the Court received Plaintiff's opposition to Defendants' motion for summary judgment. *See* Doc. No. 51. Upon review, the Court noticed that page 5 of his declaration—containing this content—was missing and so afforded Plaintiff the opportunity to resubmit the document. *See* Doc. No. 53.

Plaintiff resubmitted the declaration in complete form, *see* Doc. No. 57 at 3–19, along with an attestation that raises concerns about how and when the page went missing, *see id.* at 2. Such issues, while concerning, are beyond the scope of this summary judgment motion.

F.2d 309, 312 (9th Cir. 1982)) (quotation marks omitted), and fail to put forth evidence creating a genuine dispute on this point.

Based on the undisputed record, Plaintiff was informed that his retaliation allegations were being rejected as unrelated under the one-issue rule. He was also, however, informed that if he attempted to cure under the one-issue rule, by filing a separate grievance as to retaliation, it would be rejected as untimely and duplicative—*i.e.*, related. Therefore, the Court finds that any remaining administrative remedy was unavailable to Plaintiff as a practical matter. Accordingly, the Court **DENIES** Defendants' motion for summary judgment and instead **GRANTS** summary judgment in favor of Plaintiff on the issue of exhaustion.

6. *Improper Screening Exception*

Based upon the evidence and argument put before the Court, further analysis is appropriate. Even assuming: (1) there is a question of fact regarding whether an administrative remedy was available to Plaintiff; or (2) such a remedy was available to Plaintiff, the Court finds that Plaintiff is excused from exhaustion. As noted above, the Ninth Circuit recognizes the improper screening exception. To fall within the improper screening exception,

> A prisoner must show that he attempted to exhaust his administrative remedies but was thwarted by improper screening. In particular, the inmate must establish (1) that he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court, and (2) that prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations.

*Sapp v. Kimbrell*, 623 F.3d 813, 823–24 (9th Cir. 2010).

The first element is clearly met. Plaintiff's 602 sufficed to put RJD on notice of his retaliation claims and thus, if substantively addressed, would have undoubtedly exhausted the issues before the Court. The second element turns on whether RJD's failure to substantively address the retaliation issue was consistent with the regulations.

Plaintiff's retaliation claim was rejected solely because, according to RJD officials, his 602 presented two separate issues.  In 2019, the one-issue rule stated, in relevant part:

> (1) The inmate or parolee is **limited to one issue or related set of issues** per each Inmate/Parolee Appeal form submitted. The inmate or parolee shall not combine unrelated issues on a single appeal form for the purpose of circumventing appeal filing requirements. Filings of **appeals combining unrelated issues shall be rejected and returned** to the appellant by the appeals coordinator **with an explanation that the issues are deemed unrelated and may only be submitted separately**.

15 Cal. Code Regs. § 3084.2(a)(1) (emphasis added) (repealed).

There is a question of fact as to whether the 602 presented two separate or related issues.  Regardless, assuming Plaintiff's 602 did present two unrelated issues, the regulations did not give RJD officials the discretion to screen out one issue and address the merits of another.  *See Student Loan Fund of Idaho, Inc. v. U.S. Dept. of Educ.*, 272 F.3d 1155 (9th Cir. 2001) (explaining that the tools of statutory construction require a court to begin by engaging in a textual analysis and reading the words of a statute in their context).  This is confirmed by Defendants' own evidence.  H. Le explains the one-issue rule, in full:

> Administrative appeals/grievances submitted by a prisoner are assigned log numbers in IATS (prior to 06/01/20) or in OGT (on or after 06/01/20). Appeals submitted prior to June 1, 2020, were only allowed to contain one complaint. ***If the complaint did not comply with regulations, that appeal was "screened out" or rejected by the Appeals Coordinator***. As of June 1, 2020, grievances are allowed to contain unlimited claims. If a claim does not comply with current regulations, then that single claim is "screened out." Screened out claims, on either an appeal or grievance, are returned to the inmate with the assigned log number and reason for rejection. For appeals processed prior to June 1, 2020, claims returned to the inmate included instructions to remedy a deficiency so the appeal would comport with CDCR's appeal regulations.

Le Decl. ¶ 7 (emphasis added).  Thus, only under the *current* regulations can prison officials screen out a "single claim," in direct contrast to the regulations in effect at the

time, which called for officials to screen out or reject the entire grievance. *Id.*

In considering the applicability of the improper screening exception, the Court keeps in mind the purpose of the exhaustion requirement. As the Ninth Circuit has stated, "[j]ust as the PLRA promotes the benefits of exhaustion . . . , the exception . . . promotes exhaustion's benefits by removing any incentive prison officials might otherwise have to avoid meaningfully considering inmates' grievances by screening them for improper reasons." *Sapp*, 623 F.3d at 823.

Application of the exception on these facts furthers exhaustion's purpose. If RJD had not screened out the retaliation issue, it would have been the subject of the OOA's review and thus Plaintiff would have unquestionably duly exhausted the matter before the Court. There is a factual issue as to whether Plaintiff's grievance was mishandled. Regardless, under either reading of the 602, RJD's screening of it was inconsistent with the regulations. Assuming the 602 did present two separate issues, RJD did not have the authority to address only one. Therefore, the decision to do so—and in doing so, screening out Plaintiff's retaliation claim—is neither consistent with nor supported by the regulations. Under the alternative reading of the 602, Plaintiff did not present two unrelated issues: he complained of the related issues of retaliation and due process. Accordingly, the screening out of the former under the guise of the one-issue rule was also improper.

The reason RJD's misapplication of the rule is problematic is evidenced through the Court's discussion above *supra* Part IV.B.5. By not considering, or alternatively rejecting, the 602 in its entirety, Plaintiff had no way to grieve the alleged retaliation within RJD. Any additional 602 would have been—as Plaintiff was informed—properly rejected under the rules as duplicative of the one that remained pending. 15 Cal. Code Regs. § 3084.6(c)(2) (repealed).

The regulations that set forth the administrative remedy procedure in California delineate the necessary path that both prisoners and prisons must follow. It is clear on the record that RJD did not properly apply the one-issue rule and that this misapplication left

Plaintiff with no available administrative remedy.  A finding of lack of exhaustion on the present record would gratuitously incentivize prison officials to screen appeals inconsistent with the regulations such that prisoners cannot pursue the necessary sequence, administrative review within the prison becomes unattainable, and judicial redress becomes impossible.  Indeed, application of the exception on these facts removes any incentive prison officials might have to avoid meaningfully considering grievances by screening them under the pretext of a regulation they themselves misapply.

The Ninth Circuit has not yet squarely addressed the present situation.  However, a case from the Tenth Circuit is instructive on this point.  *See Little v. Jones*, 607 F.3d 1245 (10th Cir. 2010).  As the court in *Little* explained, in Oklahoma, the prison grievance procedure did not give prison officials at the highest level of appeal the authority "to reject an appeal because it contains multiple issues. Although the procedures expressly state that a prisoner may raise only 'one issue or incident' in both the [Request to Staff] and the grievance, there is no comparable limitation on appeals to the ARA." *Id.* at 1250. The Tenth Circuit went on to explain:

> Mr. Little asserted his right to a vegan diet at every level of the administrative process. To the extent that Mr. Little asserted additional issues in his grievance appeal, the ARA was authorized to ignore them and address only the merits of the diet issue. It was not, however, authorized to reject his grievance appeal in toto. Because the ARA exceeded its authority when it rejected Mr. Little's grievance appeal, it rendered that final step of exhaustion unavailable. Accordingly, we excuse Mr. Little's failure to exhaust administrative remedies regarding his claim to a vegan diet as part of his religious practices and hold that the district court erred in dismissing his complaint.

*Id.*

Similarly, Plaintiff complained of retaliation at every level of the administrative process.  To the extent his 602 presented an unrelated due process issue, RJD did not have the authority to inform Plaintiff that it would only address due process and not retaliation.  RJD was only authorized to reject Plaintiff's grievance in its entirety, which

it chose not to do.  As such, RJD improperly screened his 602, interfering with Plaintiff's ability to exhaust the issue of retaliation.

Based upon the foregoing, the Court alternatively finds that application of the improper screening exception is warranted on the undisputed facts and therefore excuses any failure by Plaintiff to exhaust.

**C.     Summary**

In sum, the Court finds that Plaintiff's 602 put RJD on sufficient notice of the core allegations and parties identified in this case such that RJD had an opportunity to address the claims in the Complaint.  The Court further finds that Defendants have failed to meet their burden of demonstrating the availability of an administrative remedy, and instead the undisputed evidence reveals that such a remedy was unavailable to Plaintiff.  Alternatively, the Court excuses any failure on Plaintiff's end to properly exhaust due to RJD's improper screening of his appeal.  Accordingly, the Court **DENIES** Defendants' motion for summary judgment and instead **GRANTS** summary judgment in Plaintiff's favor on the issue of exhaustion.

## V. MOTION TO PRECLUDE EVIDENCE

On May 20, 2022, Plaintiff filed a motion to preclude evidence.  Doc. No. 56.  In particular, Plaintiff asks the Court to preclude Defendants and defense counsel from presenting any argument or evidence of Plaintiff's guilt of possessing a cell phone in his typewriter since he was "exonerated of such conduct."  *Id.* at 1.

The Court cannot exclude evidence of Plaintiff's initial guilty finding at this time because, as discussed above, it is necessary evidence on the issue of exhaustion: the initial guilty finding on the RVR is what precipitated Plaintiff's 602 and appeal.  That said, the Court duly ignored Defendants' argument that Plaintiff's typewriter in fact contained a cell phone as the assertion is wholly irrelevant to both pending motions.  Nonetheless, Plaintiff's motion raises a valid question as to the ultimate admissibility of the guilty finding and relatedly, argument that the typewriter did contain a cell phone.

Following the OOA's decision, on either January or February 8, 2020,[15] it was "ordered" that Plaintiff be reissued the RVR and that the matter be reheard.  Doc. No. 44-3 at 60, 71.  On January 13, 2020, a "Visiting Restrictions note" was entered into Plaintiff's visitation file.  *Id.* at 64.  On February 13, 2020, Plaintiff was reissued the RVR, logged as No. 68603333(R1).  *Id.* at 60.  The new "violation date" was February 8, 2020.  *Id.*  A rehearing was held on February 26, 2020, and Plaintiff was found not guilty of possessing a cell phone in his typewriter.  *Id.* at 66.

The basis for the not guilty disposition is unclear.  Via evidentiary objection, Defendants assert that it was because the RVR was not timely issued to Plaintiff.  *See, e.g.*, Doc. No. 58-2 at 2.  This appears consistent with the re-issued RVR hearing results, which states: "In this case, your Due Process Rights were violated due to the first copy not issued within 15 days of discovery.  SHO found subject not guilty of Possession of a Cellular Telephone."  Doc. No. 44-3 at 66.  However, the document also states: "SHO reviewed the photo evidence and finds that the contraband item is a cellular telephone.  When taken together, the facts meet and exceed the preponderance of the evidence threshold required in upholding a not guilty verdict."  *Id.*

It is unclear at this time whether the not guilty finding has any preclusive effect on the issues before the Court in this case.  The parties are not litigating whether Plaintiff's typewriter contained a cell phone.  But Defendants continue to advance the argument that there was a cell phone in Plaintiff's typewriter.  *See* Doc. No. 38 at 13 ("But Faunce's typewriter, because it was altered to allow the insertion of a cellular telephone and charger became contraband subject to seizure and destruction."); *see also id.* at 12

---

[15] The post-appeal, reissued RVR states "On January 8, 2020 at approximately 1434, the Chief Disciplinary Officer ordered RVR LOG#6860333 re-issued and re-heard . . ."  Doc. No. 44-3 at 60.  However, the post-appeal Disciplinary Hearing Results for the reissued RVR states that the "Ordered Rehearing Date" was February 8, 2020.  *Id.* at 65.  One of these documents therefore contains a typographical error, and the Court is unable to ascertain which date is correct in large part due to Defendants' failure to provide the Court with a separate statement of undisputed facts detailing Plaintiff's exhaustion efforts.

("Faunce's lawsuit stems from his possession of items of contraband and their seizure . . . ."); *id.* (describing Plaintiff's typewriter as "the contraband word processor"); *id.* (". . . the search of Faunce's cell which yielded contraband."). Nor is it yet clear what evidentiary issues exist.

As noted above, Plaintiff's motion raises two distinct issues: (1) whether evidence and argument of the initial guilty finding may be proffered; and (2) whether Defendants may advance the argument that Plaintiff had contraband in his typewriter. These questions may potentially implicate collateral estoppel and evidentiary issues. Nonetheless, this motion is more appropriate for trial or summary judgment on the merits as the ultimate disposition of the matter on rehearing is not relevant to the issue of exhaustion. Accordingly, the Court **DEFERS** ruling on Plaintiff's motion until such a time that it becomes relevant. If Defendants move for summary judgment on the merits and either: (1) offer the guilty finding; or (2) argue Plaintiff's typewriter contained contraband, they are **DIRECTED** to respond to Plaintiff's motion at that time. If, however, Defendants forgo another round of summary judgment, or do not offer this evidence or argument at that time, the Court will address the matter *in limine*.

## VI. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** Plaintiff's motion for leave to amend. Leave to file the First Amended Complaint is granted solely to the extent it names Lieutenant H. Ferrel and CDCR Secretary Kathleen Allison as Defendants. Accordingly, only Plaintiff's first (retaliation), *see* FAC at 17, and second (conspiracy), *id.* at 18, causes of action continue to proceed.

The Court **DIRECTS** the Clerk of Court to issue a summons as to Lieutenant H. Ferrel and CDCR Secretary Kathleen Allison only and forward it to Plaintiff along with two copies of blank U.S. Marshal Form 285—one for each of these Defendants. In addition, the Clerk will provide Plaintiff with a certified copy of this Order, a certified copy of his First Amended Complaint (Doc. No. 34), and the summons so that he may serve these two Defendants.

Within **fourteen (14) days** of receipt of this "IFP Package," Plaintiff is **ORDERED** to complete the Form 285s for Defendants Ferrel and Allison as completely and accurately as possible, include an address where these two Defendants may be served, *see* CivLR 4.1.c, and return it to the United States Marshal according to the instructions the Clerk provides in the letter accompanying his IFP package.

Within **fourteen (14) days** of receiving Plaintiff's completed U.S. Marshal Form 285s, the U.S. Marshal is **ORDERED** to serve a copy of the First Amended Complaint and summons upon Defendants Ferrel and Allison as directed by Plaintiff on the USM Form 285s.  All costs of that service will be advanced by the United States.  *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3).

The Court **ORDERS** that all Defendants must then respond to Plaintiff's First Amended Complaint no later than **fourteen (14) days** after receipt of service upon Defendants Ferrel and Allison.  *See* Fed. R. Civ. P. 15(a)(3); *see also* 42 U.S.C. § 1997e(g)(2).

The Court **DIRECTS** the Clerk of Court to provide Margaret Addison a courtesy copy of this order via email at margaret.addison@usdoj.gov.

The Court **DENIES** Defendants' motion for summary judgment and instead **GRANTS** summary judgment in Plaintiff's favor as to the issue of exhaustion.

Finally, the Court **DEFERS** ruling on Plaintiff's motion to preclude evidence at this time as discussed above.

**IT IS SO ORDERED**.

Dated:  June 27, 2022

HON. MICHAEL M. ANELLO
United States District Judge